UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIO CALDERON AGUILAR,

     Petitioner,

v.

ANGELA DUNBAR, et al.,

     Respondents.

Case No. 25-cv-12831

Honorable Robert J. White

---

**OPINION AND ORDER TRANSFERRING THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS TO THE WESTERN DISTRICT OF MICHIGAN**

---

## I.  Introduction

Elio Calderon Aguilar filed a petition for a writ of habeas corpus, under 28 U.S.C. § 2241, challenging his detention pursuant to an April 2003 final order of removal that the Secretary of Homeland Security reinstated in August 2025.  The amended petition names United States Attorney General Pamela Bondi, United States Homeland Security Secretary Kristi Noem, and United States Immigration and Customs Enforcement Field Office Director Robert Lynch as respondents (the "federal respondents").  Calderon Aguilar is currently detained at the North Lake Processing Center in Baldwin, Michigan.  He named the facility's warden, Angela Dunbar, as a respondent as well.

Before the Court is Calderon Aguilar's amended petition. (ECF No. 10). The federal respondents opposed it. (ECF No. 13). Calderon Aguilar filed a reply. (ECF No. 15). The federal respondents submitted additional materials to supplement their opposition brief. (ECF No. 18). The Court held a hearing on the amended petition on October 30, 2025. For the following reasons, the amended petition is transferred to the Western District of Michigan – the district where Calderon Aguilar is detained.

II.    Background

Calderon Aguilar is a Honduran citizen. (ECF No. 13-2, PageID.79, ¶ 4). He's entered the United States unlawfully at least four times over the past 30 years. (*Id.*, PageID.79-82, ¶¶ 5, 12-13, 15-16). United States Immigration and Customs Enforcement ("ICE") officers arrested him on August 25, 2025 in Dearborn, Michigan. (*Id.*, Page ID.83, ¶ 22; ECF No. 13-7, PageID.94). That same day, the Secretary of Homeland Security issued Calderon Aguilar a Form I-871. (ECF No. 13-6, PageID.92). The form notified Calderon Aguilar that the Secretary reinstated a previous final order of removal issued against him on April 2, 2003. (*Id.*; ECF No. 13-3, PageID.85).

Calderon Aguilar then challenged his detention in immigration court. (ECF No. 1, Page ID.2). The immigration judge decided that he lacked jurisdiction to entertain the requested relief. (*Id.*). Calderon Aguilar now petitions for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). The amended petition seeks,

among other things, Calderon Aguilar's release from ICE custody, or in the alternative, an order directing the immigration judge to conduct a bond hearing.[1] (ECF No. 10, PageID.54; *see also* ECF No. 1, PageID.13). Meanwhile, ICE is detaining Calderon Aguilar at the North Lake Processing Center in Baldwin, Michigan.[2] (ECF No. 13-2, PageID.83, ¶ 22; ECF No. 18-9, PageID.194).

III.    Legal Standards

The "Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions" may grant writs of habeas corpus. 28 U.S.C. § 2241(a). Jurisdiction in this context does not mean subject-matter jurisdiction. *Rumsfeld v. Padilla*, 542 U.S. 426, 434 n.7 (2004). Nor does it appear to mean personal jurisdiction, although federal courts diverge on this point. *Id.* at 445-447; *but see id.* at 451 (Kennedy, J., concurring) ("In my view, the question of

---

[1] Calderon Aguilar filed a supplemental brief informing the Court that another immigration judge conducted a bond hearing on November 7, 2025. (ECF No. 19, PageID.195-96; 202-03). The immigration judge denied bond after concluding that Calderon Aguilar posed a flight risk. (*Id.*, PageID.202). This development appears to moot the portion of the amended petition seeking a bond hearing. Because the amended petition must be transferred to the Western District of Michigan ultimately, the Court need not decide this question.

[2] There was some initial confusion about whether ICE had transferred Calderon Aguilar to the Monroe County jail, which is located in the Eastern District of Michigan. (ECF No. 18-5, PageID.186). 28 U.S.C. § 102(a)(1). The parties confirmed at the October 30 hearing that ICE has detained Calderon Aguilar at the North Lake Processing Center since his arrest. (ECF No. 13-2, PageID.83, ¶ 22; ECF No. 18-2, PageID.111-12, ¶ 10; ECF No. 18-9, PageID.194).

the proper location for a habeas petition is best understood as a question of personal-jurisdiction or venue.").

The Supreme Court defines habeas jurisdiction in terms of "territorial jurisdiction." *Id.* at 444.  Territorial jurisdiction is "[j]urisdiction over cases arising in or involving persons residing within a defined territory." Black's Law Dictionary (12th ed. 2024).  Whether this type of jurisdiction is subject to waiver is also a point of departure among federal courts.[3] *Compare Ahrens v. Clark*, 335 U.S. 188, 193 (1948) (holding that territorial jurisdiction "may not be waived by the parties.") *with Kanai v. McHugh*, 638 F.3d 251, 258 (4th Cir. 2011) (holding that "any challenge to habeas proceedings based on" lack of territorial jurisdiction "is waived if not timely asserted.").  One thing is clear, however, and most important to the following discussion: territorial jurisdiction may be addressed on the court's own initiative. *See Wooten v. United States*, No. 23-1072, 2023 U.S. App. LEXIS 22536, at *4-5 (6th Cir. Aug. 23, 2023); *see also Day v. Trump*, 860 F.3d 686, 689 (D.C. Cir. 2017) (affirming the district court's *sua sponte* dismissal of a habeas petition for lack of

---

[3] Waiver is not implicated here because the federal respondents cannot waive territorial jurisdiction on behalf of Warden Dunbar, who has not appeared in this action. *Cf. Gonzalez v. Grondolsky*, 152 F. Supp. 3d 39, 46 n.5 (D. Mass. 2016) ("the court does not believe one respondent may waive this territorial-jurisdiction limitation for a non-party.").  The government filed a notice of appearance on behalf of the federal respondents only. (ECF No. 12, PageID.56).

territorial jurisdiction).  The Court will, therefore, address its territorial jurisdiction *sua sponte*.

IV.    Analysis

The Court approaches the question of whether it possesses the necessary territorial jurisdiction to entertain the amended habeas petition from a unique vantage point.   Both Calderon Aguilar and the federal respondents believe jurisdiction is proper in the Eastern District of Michigan.  The Court respectfully disagrees.

Assessing whether jurisdiction is appropriate in the Eastern District of Michigan entails a two-step analysis.  The Court must (1) identify the proper respondent to the petition, and (2) determine whether it has territorial jurisdiction over that respondent. *See Padilla*, 542 U.S. at 434.  Each of these prongs is discussed in turn.

A.    *Identifying the Proper Respondent*

The proper respondent to a federal habeas petition is apparent from the statutory text: it is "the person who has custody over" the petitioner. 28 U.S.C. 2242; *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained.").  Federal courts must employ the "immediate custodian" rule to identify "the person who has custody over" the petitioner when the requested habeas relief challenges the petitioner's "present

5

physical confinement" – what the United Supreme Court terms a "core" habeas "challenge." *Padilla*, 542 U.S. at 435.  The rule "contemplate[s] a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Id.* (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)) (emphasis supplied in *Padilla*).  This gloss provides an added layer to the "immediate custodian" rule in that the immediate custodian must be the petitioner's immediate *physical* custodian, as opposed to someone who exercises *constructive legal* custody over the petitioner. *Id.* at 438-40 (focusing the inquiry on the petitioner's "immediate physical custodian").

In summary, "the default rule" in habeas challenges to present physical confinement "is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or *some other remote supervisory official*." *Id.* at 435 (emphasis added); *see also id.* at 439 ("In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.").

Calderon Aguilar's amended petition raises a "core" habeas challenge because he seeks outright release, or at a minimum, a bond hearing to obtain his release from ICE detention. (ECF No. 10, PageID.54).  So the "immediate custodian" rule governs.  And applying the rule yields only one proper respondent – the North Lake

Processing Center's warden, Angela Dunbar. *Padilla*, 542 U.S. at 434 (observing that the federal habeas statute's "consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.").

> B.     *Territorial Jurisdiction Over Warden Dunbar*

Since Warden Dunbar is the appropriate respondent, the Court must next ascertain whether it has territorial jurisdiction over her.  As noted above, federal courts are limited to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a).  The Supreme Court construes "this language to require nothing more than that the court issuing the writ have jurisdiction over the custodian." *Padilla*, 542 U.S. at 442 (quotation omitted); *see also Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973).

"[F]or core habeas petitions challenging present physical confinement," the general rule is that "jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 443; *see also Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (per curiam) (stating that the district of confinement rule applies to "core" immigration habeas proceedings).  This jurisdictional standard is a narrow one; it expressly precludes federal courts from exercising jurisdiction "in any district" where "the respondent is amenable to service of process." *Padilla*, 542 U.S. at 443.  And the rule makes sense because "[i]n habeas challenges to present physical confinement .

. . the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent." *Id.* at 444. So "[b]y definition, the immediate custodian and the prisoner [will] reside in the same district." *Id.*

Here, Calderon Aguilar is currently detained at the North Lake Processing Center in Baldwin, Michigan. And Baldwin is in Lake County, which falls within the Western District of Michigan's territorial jurisdiction. 28 U.S.C. § 102(b)(1). As a result, this Court lacks the requisite territorial jurisdiction to entertain the amended habeas petition.

### C.    *Response to the Parties*

The parties disagree with this conclusion. They assert that the Sixth Circuit Court of Appeals' decision in *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003) – as opposed to the Supreme Court's subsequent decision in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004) – provides the controlling framework for evaluating the Court's jurisdiction.

In *Roman*, the habeas petitioner – a noncitizen from the Dominican Republic – challenged the Immigration and Nationality Act's discretionary-relief-from-removal provision on Fifth Amendment equal protection grounds. *Roman*, 340 F.3d. at 316-17. He filed a petition for a writ of habeas corpus, pursuant to section 2241, against then-Attorney General John Ashcroft, the Immigration and Naturalization Service ("INS") commissioner, the former INS district director in Cleveland, and the

INS district director in New Orleans. *Id.* at 317.  Although INS detained the petitioner at a facility located in the Western District of Louisiana when he requested habeas relief, the petitioner filed the petition in the Northern District of Ohio – the federal district that imposed the criminal sentences underlying his removal. *Id.* at 316.  The government moved to dismiss the petition in part because "the district court lacked personal jurisdiction over the respondents." *Id.*  The district court granted the motion as to the New Orleans INS district director, denied it as to the attorney general, and expressly declined to address whether the petition appropriately named the INS commissioner and Cleveland district director as respondents. *Id.* at 318.  The district court eventually granted the writ on constitutional grounds, finding that the discretionary-relief-from-removal provision violated the Fifth Amendment's Equal Protection Clause. *Id.*  The government appealed and the Sixth Circuit reversed. *Id.*

Limiting its analysis to whether the district court properly exercised its jurisdiction over the attorney general, the Sixth Circuit initially consulted the "immediate custodian" rule. *Id.* at 319.  Under the rule, the court of appeals observed that a habeas petitioner "should generally name as a respondent the warden of the prison where he is confined." *Id.* at 320.  And the panel acknowledged that "a detained alien filing a habeas corpus petition should" similarly "name as a respondent the person exercising daily control over his affairs." *Id.*

But the Sixth Circuit found that "although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located '*has power over*' alien habeas corpus petitioners." *Id.* (emphasis added).  Exploring the scope of an INS district director's authority to "oversee the confinement of aliens," the court of appeals stressed that (1) detention facility wardens "act pursuant to INS Detention Standards and are considered agents of the INS District Director in their district," (2) "INS does not vest power over detained aliens in the wardens of detention facilities" merely "because the INS relies on state and local governments to house federal INS detainees," and (3) "[w]hatever daily control state and local governments have over federal INS detainees, they have that control solely pursuant to the direction of the INS."[4] *Id.*

---

[4] *Roman* references the INS commissioner and INS district directors because the petitioner there requested habeas relief in May 2001, before Congress enacted the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.  Since March 1, 2003, "the office of Immigration and Customs Enforcement, a unit of the Department of Homeland Security, has assumed responsibility for enforcement of the immigration laws." *Kholyavskiy*, 443 F.3d at 948 n.1.  The former INS district directors are today's ICE field office directors; they serve the same function. *Id.*; *see also* 8 C.F.R. § 1.2.  The Homeland Security Act also transferred responsibility for immigration enforcement from the attorney general and the Department of Justice to the Department of Homeland Security and its secretary. *Cisse v. Gonzales*, 255 F. App'x 971, 972 n.1 (6th Cir. 2007).  Three new agencies within the Department of Homeland Security now cover INS's previous mandate – ICE, United States Customs and Border Protection, and United States Citizenship and Immigration Services. *Id.*

These factors led the Sixth Circuit to decide that (1) the INS district director for the district where the petitioner is being detained is the correct immediate custodian in immigration habeas proceedings, and (2) placing aside certain exceptions, the immediate custodian cannot be the attorney general. *Id.* at 320, 327. Calderon Aguilar and the federal respondents now point to the first holding and beckon its application in this case.  The Court declines the overture.

*Roman* raises two open questions.  *One* – whether it supplies the appropriate standard for identifying Calderon Aguilar's immediate physical custodian.  And *two* – whether the Supreme Court's decision in *Padilla* significantly erodes its precedential integrity.

The answer to the first question is straightforward: *Roman* does not govern the jurisdictional analysis in this case.  *Padilla* says that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States," *i.e.*, a "core" habeas challenge, "he should name his warden as respondent and file the petition in the district of confinement." *Padilla*, 542 U.S. at 447.  But the petitioner in *Roman* never raised a "core" habeas challenge.  He instead attacked the Immigration and Nationality Act's discretionary-relief-from-removal provision on equal protection grounds – a request for "*non-core*" habeas relief. *Roman*, 340 F.3d. at 316-17.

Because no one disputes that Calderon Aguilar is mounting a "core" habeas challenge – since the amended petition seeks his release from ICE custody or a bond hearing challenging his detention – the parties' reliance on *Roman* is misplaced. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024) (holding that *Roman* was inapplicable to a noncitizen's habeas challenge to "his present physical confinement" because *Roman* addressed a "non-core" habeas petition); *see also Kholyavskiy v. Achim*, 443 F.3d 946, 952-53 (7th Cir. 2006) (holding that the petitioner advanced a "core" habeas challenge and, therefore, the detaining warden – not the ICE field office director – was the proper immediate physical custodian).

As for the second question, even assuming the *Roman* petition could be construed as a challenge to the petitioner's present physical confinement, the Sixth Circuit's holding in that case would not alter Calderon Aguilar's jurisdictional predicament.  That's because *Roman* conflicts with the Supreme Court's decision in *Padilla* in several important respects.

To start, *Padilla* expressly rejected *Roman*'s justification for why the immediate custodian in immigration habeas proceedings should be the ICE field office director for the district where the petitioner is being detained.  In *Roman*, the Sixth Circuit held that the INS district director is the appropriate habeas respondent because that official is the one who has everyday "power over" the noncitizen. *Roman*, 340 F.3d at 320.  For example, "district directors have authority and

responsibility to grant or deny various applications or petitions submitted to the [INS], to initiate any authorized proceeding in their district, and . . . to issue notices to appear in removal proceedings." *Id.* They also "oversee the confinement of aliens in all three kinds of INS detention facilities – Service Processing Centers, Contract Detention Facilities, and state or local government facilities used by INS through Intergovernmental Service Agreements." *Id.* (internal quotation marks omitted).

Yet this description tracks the very "legal control" test the *Padilla* Court deemed irreconcilable with the "statutory language, established practice," and the Court's own "precedent" governing federal habeas petitions. *Padilla*, 542 U.S. at 439-40. The Court could not have been more emphatic in its repudiation of *Roman*'s broad construction of the "immediate custodian" rule than when it "reaffirm[ed] that the immediate custodian, *not a supervisory official who exercises legal control*, is the proper respondent" for "core" habeas challenges. *Id.* at 439 (emphasis added).

On a fundamental level, *Roman* "makes the logical misstep . . . of conflating the person responsible for authorizing custody with the person responsible for maintaining custody," *Kholyavskiy*, 443 F.3d at 953 (quotation omitted); *see also al-Marri v. Rumsfeld*, 360 F.3d 707, 710-11 (7th Cir. 2004), when the Supreme Court firmly established the opposite notion; that "the proper respondent is the person responsible for *maintaining* – not *authorizing* – the custody of the prisoner." *Padilla*,

542 U.S. at 440 n.13 (emphasis added).  In this tug-of-war between the Sixth Circuit and the Supreme Court, the latter's view is the one that must prevail.

*Roman* also did not consider the procedural anomalies the Supreme Court attempted to forestall with *Padilla*'s "immediate physical custodian" test.  The Court cautioned that a functional "legal control" test, like the one *Roman* adopted, would authorize petitioners to "name a high-level supervisory official as respondent," such as the attorney general or the Homeland Security secretary, "and then sue that person wherever he is amenable to long-arm jurisdiction." *Padilla*, 542 U.S. at 447; *see also id.* at 439; *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994) (rejecting the argument that "the writ should issue to the district director of the INS, over whom the court did have personal jurisdiction" so that "detainees under the constructive custody of the district director, even those not within the court's district, should be subject to the court's habeas jurisdiction.").  And it warned that such a test would foster an unmanageable procedural landscape where federal courts would encounter "rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation" to section 2241. *Padilla*, 542 U.S. at 447.  Following *Roman* would open the door to the same procedural chaos *Padilla* sought to avert.

Insofar as the parties appear to glean from *Roman* an immigration exception to the "immediate physical custodian" rule, they are mistaken.  In *Roman*, the Sixth

Circuit noted that "most courts adopting the immediate custodian rule for alien habeas corpus petitioners have explicitly noted the possibility of exceptions." *Roman*, 340 F.3d at 322. And it entertained the prospect that "[i]n light of the degree of control which the Attorney General has over an alien's immediate custodian . . . it may be appropriate to recognize the Attorney General as a proper respondent to an alien's habeas corpus petition under certain circumstances." *Id.* at 324-25.

But *Roman* never adopted an immigration exception to the "immediate physical custodian" rule for "core" habeas challenges. And the Supreme Court foreclosed that possibility when it observed, in *Padilla*, that "[w]e have never intimated that a habeas petitioner could name someone other than his immediate physical custodian as respondent simply because the challenged physical custody *does not arise out of a criminal conviction*." *Padilla*, 542 U.S. at 439 (emphasis added); *cf. J.G.G.*, 604 U.S. at 672 (stating that the district of confinement rule applies to "core" immigration habeas proceedings, presumably because the immediate physical custodian would be located there). Nor can this Court – like other federal courts to have considered the question – "discern" a "principled basis for adopting a different, more expansive meaning of the word 'custodian' in the immigration context as opposed to the prisoner context." *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000).

15

Neither does *Padilla*'s footnote eight indicate the Supreme Court's tacit acquiescence to the existence of such an exception.  There, the Court cited to *Ahrens v. Clark*, 335 U.S. 188 (1948) and stated that, in *Ahrens*, "we left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation" and "[b]ecause the issue is not before us today, we again decline to resolve it." *Padilla*, 542 U.S. at 435 n.8.  However, the habeas petitioners in *Ahrens* raised only "non-core" challenges to their *removal* as opposed to "core" challenges to their *detention*, *i.e.*, their present physical confinement. *Ahrens*, 335 U.S. at 189.  So footnote eight in no way bolsters the case for recognizing an immigration exception to *Padilla*'s "immediate physical custodian" rule in the "core" habeas setting. *See Doe*, 109 F.4th at 1195-96 (ruling that "Footnote eight in *Padilla* does not affect the application of the immediate custodian rule for core habeas petitions filed by immigrant detainees" and that it "at most suggests that when an alien's habeas petition does not present a core habeas challenge under *Padilla*, the Attorney General may be a proper respondent."); *see also Parlak v. Baker*, 374 F. Supp. 2d 551, 556 (E.D. Mich. 2005) (Cohn, J.) (similarly concluding that the "the question left open" in footnote eight "was the jurisdictional rules governing *non-core* alien habeas petitions, where a petitioner challenges something other than their present confinement.") (emphasis added).

Apart from delineating the "immediate custodian" rule too expansively, *Roman* likewise misconceives what section 2241(a) means by "jurisdiction." There, the Sixth Circuit equated jurisdiction in immigration habeas proceedings to "personal jurisdiction over [the] custodian." *Roman*, 314 F.3d at 319. This formulation cannot survive post-*Padilla*.

In *Padilla*, the Supreme Court explicitly stated that its own precedent "in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdiction." *Padilla*, 542 U.S. at 445; *see also* Black's Law Dictionary (6th ed. 1990) (defining "long arm statutes" as "[v]arious state legislative acts which provide for personal jurisdiction, via substituted service of process"). And in reversing the court of appeals, the *Padilla* Court rejected the lower court's "long-arm approach to habeas jurisdiction" where "a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction." *Id.* at 445, 447. *Roman*'s conception of habeas jurisdiction as personal, rather than territorial, would encourage petitioners to follow this exact playbook. *But see id.* at 451 (Kennedy, J., concurring).

Lastly, the weight of authority among the federal courts of appeals – including appellate opinions issued before and after the Supreme Court decided *Padilla* in 2004 – substantially undercuts *Roman*'s continuing vitality. Not a single court of

appeals has followed *Roman* or endorsed its reasoning to hold that the ICE field office director for the district where the petitioner is being detained is the appropriate immediate custodian in "core" immigration habeas proceedings. *See, e.g., Doe*, 109 F.4th at 1197 (expressly rejecting *Roman* and holding that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition."); *Anariba v. Dir. Hudson Cty. Corr. Ctr.*, 17 F.4th 434, 446 (3d Cir. 2021) (noting in a "core" immigration habeas proceeding that the appropriate immediate custodian was the Director of the Hudson County Correctional Facility); *Thompson v. Barr*, 959 F.3d 476, 491 (1st Cir. 2020) (citing *Padilla* and transferring a "core" habeas proceeding to "the Northern District of Alabama, the district where Thompson remains confined."); *Kholyavskiy*, 443 F.3d at 947 (affirming the district court's finding in a "core" habeas proceeding that "the proper respondent to Mr. Kholyavskiy's habeas petition is the warden of the Kenosha Detention Center, the facility in which he is detained."); *Vasquez*, 233 F.3d at 696 ("we hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained.").

And a review of the Sixth Circuit's own precedents yields not one occasion where the court of appeals employed *Roman* to determine the appropriate immediate physical custodian in a "core" immigration habeas proceeding.[5] So it appears that even the Sixth Circuit has pivoted away from *Roman*.

For all these reasons, the Court declines to follow *Roman* and adheres to *Padilla*'s basic requirement that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his

---

[5] The Sixth Circuit has not revisited *Roman* in the twenty years since the Supreme Court decided *Padilla*. *United States v. Garcia-Echaverria*, 374 F.3d 440, 449 (6th Cir. 2004) appears to be the last time it referenced *Roman* in an immigration context. Issued three days after the Supreme Court decided *Padilla*, *Garcia-Echaverria* cited *Roman* for the mistaken proposition that "a petition for a writ of habeas corpus is properly filed only in a court that has personal jurisdiction over the alien's immediate custodian." *Id.* This lack of guidance from the court of appeals may explain the divergence of opinions among district courts in the Sixth Circuit, and even among the judges within the Eastern District of Michigan, regarding the proper immediate physical custodian in "core" immigration habeas proceedings. *Compare Gjoliku v. Chertoff*, No. 06-11747, 2006 U.S. Dist. LEXIS 45498, at *3 n.1 (E.D. Mich. Jun. 26, 2006) (O'Meara, J.) (transferring a habeas petition to the Western District of Michigan after concluding that the Calhoun County jail warden was the appropriate immediate custodian and noting that "*Roman* was decided before the Supreme Court decision in *Padilla* . . . and cannot be reconciled with it."); *Demirxhiu v. Gonzalez*, No. 05-10054, ECF No. 6 (E.D. Mich. Feb. 28, 2005) (Rosen, J.) (same); *Beltran v. Wrona*, No. 04-60126, ECF No. 13 (E.D. Mich. Sep. 28, 2004) (Battani, J.) (same), *with Parlak*, 374 F. Supp. 2d at 557 (E.D. Mich. 2005) (Cohn, J.) (following *Roman* instead of *Padilla* and concluding that "the [INS] District Director is the proper respondent in an immigration habeas case involving a challenge to confinement, *i.e.* a core challenge."); *see also Malam v. Adducci*, 452 F. Supp. 3d 643, 654 (E.D. Mich. 2020) (Levy, J.) (following *Roman* without discussing *Padilla* and deciding that the ICE field office director is "the proper Respondent for Petitioner's request for a writ of habeas corpus.").

warden as respondent and file the petition in the district of confinement." *Padilla*, 542 U.S. at 447.  The proper immediate physical custodian is, therefore, the warden of the North Lake Processing Center, where Calderon Aguilar is detained.  And because the processing center is located in Baldwin, Michigan – which falls within the Western District of Michigan's territorial jurisdiction – this Court lacks the necessary jurisdiction to address Calderon Aguilar's amended habeas petition.

### D. *Transfer to the Western District of Michigan*

Since territorial jurisdiction is appropriate in the Western District of Michigan, the last remaining question is how to dispose of the amended habeas petition procedurally. There are two options: (1) dismissal without prejudice for lack of jurisdiction, or (2) transfer pursuant to 28 U.S.C. §§ 1406(a) or 1631. *Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012).

Section 1406(a) requires district courts to dismiss, or transfer in the interest of justice, any case that is filed in the wrong venue to "any district . . . in which it could have been brought."  Section 1631 similarly mandates that district courts transfer, in the interest of justice, any action where "there is a want of jurisdiction" to "any other such court" where the action "could have been brought at the time it was filed or noticed."  The case would then "proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in" the transferring court. *Id.*

Transfer pursuant to either statute is permissible on the court's own initiative. *See Cosmichrome*, 504 F. App'x at 472 (noting that "a district court has the power to sua sponte transfer a case"); *see also Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003) (listing section 1406(a) and 1631 among those statutes where Congress invested "federal courts [with] the power to transfer cases sua sponte."). And federal courts may resort to either statute when they lack territorial jurisdiction. *See Danko v. Director, Office of Workers' Compensation Programs, U.S. Dep't. of Labor*, 846 F.2d 366, 368-69 (6th Cir. 1988) (applying 28 U.S.C. § 1631 and concluding that transfer of an appeal to another circuit court of appeals with appropriate territorial jurisdiction would not be "in the interest of justice"); *see also Gherebi v. Bush*, 374 F.3d 727, 739 (9th Cir. 2004) (employing 28 U.S.C. § 1406(a) to transfer a case to the district court with appropriate territorial jurisdiction); *Bourke v. Hawk-Sawyer*, 269 F.3d 1072, 1074 (D.C. Cir. 2001) (construing a petition as seeking habeas relief and remanding to the district court with instructions to either dismiss the petition for lack of jurisdiction or transfer it to the district with proper territorial jurisdiction pursuant to 28 U.S.C. § 1406(a)); *Manni v. English*, No. 17-13262, 2017 U.S. Dist. LEXIS 182286, at *3-4 (E.D. Mich. Nov. 2, 2017).

For guidance on whether to dismiss or transfer a case, we turn to a holding in *Roman* that *Padilla* has not abrogated. Among its various rulings, *Roman* held that

federal courts "may decide to dismiss an action rather than transferring it under §

1631" in two situations: (1) where "no permissible federal court would have

jurisdiction over the action," or (2) "transfer would not be in the interest of justice."

*Roman*, 340 F.3d at 328; *see also Cosmichrome*, 504 F. App'x at 472 (applying the

same standard to section 1406(a) transfers).  Neither condition is present.

   As already discussed, the Western District of Michigan would have territorial

jurisdiction over Warden Dunbar.  And transfer is "in the interest of justice" since

"dismissal of the action would only cause" Calderon Aguilar "to incur the additional

expense of filing the same habeas corpus petition" in the Western District of

Michigan as well as create unnecessary delay. *Roman*, 340 F.3d at 329; *see also*

*Alghooneh v. United States Dep't of State*, No. 25-10878, 2025 U.S. Dist. LEXIS

217275, at *13 (E.D. Mich. Nov. 4, 2025) ("especially given the delay that Plaintiffs

have already experienced, the Court finds that such a transfer is 'in the interest of

justice' under 28 U.S.C. § 1406(a).").

   Consequently, dismissal instead of transfer to the Western District would most

likely constitute an abuse of discretion. *See Cosmichrome*, 504 F. App'x at 472 n.4

("We do not preclude the possibility that a district court's failure to sua sponte

transfer a case may constitute an abuse of discretion where the interest of justice

clearly warrant a transfer . . . and the court was aware of such circumstances."); 14D

Charles Alan Wright, Arthur R. Miller, & Richard D. Freer, Federal Practice and

Procedure § 3827 (4th ed. Sep. 2025 Update) ("Since the presumption should be in favor of transfer, dismissal should be appropriate in unusual circumstances.").

Because transferring a case is mandated when "in the interest of justice," the Court will transfer the amended petition to the Western District of Michigan pursuant to both sections 1406(a) and 1631. Accordingly,

IT IS ORDERED that the Clerk of the Court is directed to transfer Calderon Aguilar's amended petition for a writ of habeas corpus (ECF No. 10) to the Western District of Michigan.

Dated: November 13, 2025                          s/ Robert J. White
                                                  Robert J. White
                                                  United States District Judge